**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**TRESSIE CAMPBELL,**

    *Plaintiff,*

    *v.*

**CLARITY SERVICES, INC.,**

    *Defendant.*

Case No:_____

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Tressie Campbell ("Ms. Campbell"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages brought by Ms. Campbell against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which provides that an action to enforce any liability created under the FCRA may be brought in any appropriate United States district court without regard to the amount in controversy.

3. This Court has personal jurisdiction over the Defendant because the Defendant regularly conducts business in the State of Florida and within this District, and because the acts giving rise to this action occurred within this District.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Ms. Campbell's claims occurred in this District, where Ms. Campbell resides and received her consumer report disclosures at issue.

## PARTIES

### Ms. Campbell

5. Ms. Campbell is a natural person residing in Winter Haven, Polk County, Florida.

6. Ms. Campbell is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9. Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity Mixes Ms. Campbell's Credit File With Those of Unrelated Persons

10. Around August 23, 2021, Clarity began maintaining a credit file on Ms. Campbell.

11. At some point after it began maintaining a file on Ms. Campbell, Clarity started incorporating credit information belonging to separate, unrelated consumers into her file.

12. Clarity falsely associated information apparently belonging to unrelated individuals named "Billy Ramos" and "Roger Crouch" into Ms. Campbell's credit file. "Billy Ramos" and "Roger Crouch" bear a surname entirely different from Ms. Campbell's and are associated with a different Social Security number, date of birth, address, and other identifying information than

Ms. Campbell.

13.     Clarity's file on Ms. Campbell is an example of a mixed file.

14.     A mixed file is a credit file that contains information concerning two or more persons rather than the one person about whom it should relate.

15.     Clarity caters its consumer reports to subprime lenders, many of whom utilize the personal identifying information maintained by Clarity to verify the identity of credit applicants. Clarity also incorporates data such as bank accounts and employment information into risk scores that it often provides to certain end-users upon request.

16.     Thus, Clarity's inclusion of credit information and personally identifying information belonging to another consumer has a severe, negative effect on Ms. Campbell's ability to obtain credit, and exposes her confidential information to third parties who never requested a report on her.

17.     Clarity knows that its automated systems often erroneously match tradeline and identifying information to an incorrect consumer's credit file based on minimal commonalities. Despite such knowledge, Clarity has declined to correct its systems.

### Clarity Sells Ms. Campbell's Report Without Permissible Purpose

18.     Clarity, a CRA, has a legal obligation to furnish consumer reports only to those with a permissible purpose to obtain them. 15 U.S.C. § 1681b.

Despite that obligation, Clarity sold multiple consumer reports regarding Ms. Campbell – on at least two separate occasions – in response to credit applications submitted under the name of "Billy Ramos" and "Roger Crouch." None of those requests concerned Ms. Campbell at all.

19.   On August 23, 2021, Clarity sold a consumer report regarding Ms. Campbell to Online Payday Loan American Web Loan in response to a credit application submitted in the name of "Roger Crouch" – a request associated with a different Social Security number, date of birth, address, and other identifying information than Ms. Campbell's.

20.   Ms. Campbell's Clarity credit file disclosure confirms the sale through a common tracking number associating the "Roger Crouch" application with the report Clarity furnished on Ms. Campbell.

21.   Clarity did the same again on July 19, 2022, selling a report containing Ms. Campbell's private, legally-protected information to "CheckAdvanceUSA" in response to a separate credit application in the name of "Billy Ramos," once more keyed by a common tracking number to that individual's information rather than Ms. Campbell's.

22.   Ms. Campbell did not know, and in the exercise of reasonable diligence could not have known, that Clarity had sold these reports at the time of these sales.

23.    Clarity does not notify a consumer when it sells a consumer report about that consumer, and a report sold in response to a request submitted in another person's name generates no notice to the consumer whatsoever – no adverse-action notice, no communication from the purchasing lender, and nothing else identifying Ms. Campbell as the subject of the report Clarity furnished. The sole means by which a consumer can learn that such a sale occurred is to request and examine her own consumer file disclosure.

24.    Ms. Campbell first discovered these sales on July 23, 2026, upon obtaining and reviewing the Clarity consumer file disclosure, which for the first time revealed – through the common tracking numbers described above – that Clarity had furnished reports about Ms. Campbell in response to requests concerning "Billy Ramos" and "Roger Crouch."

25.    This action is brought within two years of that discovery and within five years of each sale pleaded above. 15 U.S.C. § 1681p.

26.    Clarity had no reason to believe it had a permissible purpose to furnish a report on Ms. Campbell to these lenders, which had requested a report concerning unrelated individuals, not Ms. Campbell. There are no meaningful commonalities between Ms. Campbell and "Billy Ramos" and "Roger Crouch" that could have justified Clarity's decision to treat a request for one as a request for the other.

27.     Despite lacking any permissible purpose whatsoever, Clarity still sold reports concerning Ms. Campbell. In doing so, Clarity both disclosed Ms. Campbell's confidential, legally protected information to entities that never requested it and incorporated those individuals' information into Ms. Campbell's file as though it were her own.

28.     Each unauthorized disclosure of Ms. Campbell's private financial information to a stranger to her transactions was itself a concrete injury to Ms. Campbell, independent of any downstream credit consequence.

**Additional Inaccuracies in Clarity's Reporting Regarding Ms. Campbell**

29.     Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

30.     On or about July 23, 2026, Ms. Campbell requested and obtained a copy of her consumer disclosure from Clarity.

31.     Ms. Campbell's review of the disclosure revealed that Clarity was reporting inaccurate, contradictory, and misleading information, as detailed below.

32.     Clarity's credit file on Ms. Campbell contains four separate driver's license entries – which is itself impossible, as Florida law permits a person to

hold only one driver's license at a time.

33.    Ms. Campbell holds exactly one Florida driver's license. The last four characters of her actual driver's license number are "7440." Any driver's license entry in Clarity's file whose visible characters or length conflict with that license is not Ms. Campbell's driver's license number, and is false.

34.    Of the entries Clarity reports, only "XXXXXXXXX7440" is consistent with her actual license number. Every other entry conflicts with it.

35.    Three of the driver's license entries Clarity reports for Ms. Campbell are false. Clarity discloses each of these entries only in redacted form, but the redaction leaves the final characters visible, and in each instance those characters conflict with the final characters of Ms. Campbell's actual license number, "7440."

36.    Whatever the redaction conceals, the visible characters alone establish that none of these entries is, or could be, Ms. Campbell's driver's license number:

- "XXXXXXXXX1271" – visible final characters "1271"

- "XXXXXXXXX0033" – visible final characters "0033"

- "XXXXXXXXX0420" – visible final characters "0420"

37.    These determinations require no inference: with Ms. Campbell's actual license number in hand, the falsity of each entry above is apparent from

the face of Clarity's own disclosure. Clarity is reporting, and selling, driver's license numbers for Ms. Campbell that are false.

38. Reasonable procedures designed to assure maximum possible accuracy of consumer reports would not report multiple conflicting license numbers for one consumer, and would have flagged and rejected the false entries rather than incorporating and selling them.

39. Compounding the harm, lenders rely on driver's license data to confirm a consumer's identity; the presence of false license data in Ms. Campbell's file creates the false impression that her identity cannot be confirmed, directly damaging her creditworthiness.

40. Clarity incorporated data reporting that during various overlapping timeframes, Ms. Campbell's housing status was "OTHER," "OWN" and "RENT," all within the same credit file. For example, Clarity reported Ms. Campbell's housing status as "OTHER" as of July 19, 2022; and "OWN" from December 3, 2021 through September 11, 2025; and "RENT" from August 23, 2021 through February 11, 2022.

41. The multiple and contradictory housing statuses Clarity reported for Ms. Campbell cannot all be simultaneously accurate. The designation "OTHER" is a catch-all category not defined anywhere in Clarity's consumer disclosure, providing no meaningful information to a lender. More importantly, it is false –

Ms. Campbell was not living in an "OTHER" housing situation at any point relevant to Clarity's reporting.

42.    Many subprime lenders – the type Clarity services almost exclusively – use housing status to gauge risk, and treat an "OTHER" housing status as less stable than "OWN" or "RENT." That treatment leads to less favorable lending terms, or outright denials of credit, for Ms. Campbell.

43.    Consequently, Clarity's inclusion of inaccurate and conflicting housing status data had a significant negative impact on Ms. Campbell's ability to obtain new credit.

44.    Clarity frequently misreported Ms. Campbell's length of residential history, often contradicting itself in its own reporting. For example, Clarity incorporated data reporting Ms. Campbell's "Months at Address" as 0 Months, three Months, 12 Months, 60 Months, 78 Months and 96 Months – figures that cannot all be simultaneously accurate.

45.    The overlapping and contradictory residential timelines Clarity reported – including Clarity's repeated reports that Ms. Campbell had resided at her current address for "0 Months" – create a facially inaccurate and frankly nonsensical residential history that violates the mandate of 15 U.S.C. § 1681e(b) and creates the negative and false impression that Ms. Campbell has recently moved, has been unhoused, moves residences frequently, or resides at multiple

residences simultaneously.

46. Clarity's employment data also contains substantial distortions about Ms. Campbell's employment history. Clarity's file contains seven different "Months at Employer" values for Ms. Campbell, including: 0 Months, one Month, 12 Months, 45 Months, 60 Months and 120 Months. It is not logically consistent for an employee to simultaneously have these contradictory employment tenures.

47. The same defect infects Clarity's employment-tenure reporting. On February 11, 2022 at 7:12:42 AM, Clarity reported Ms. Campbell had been with her employer for 60 Months. Just 45 seconds later at 7:13:27 AM, Clarity reported Ms. Campbell had been with her employer for 120 Months. It is impossible for a consumer to gain 5 years of employment history in 45 seconds on a single day.

48. The multiple timeline impossibilities Clarity incorporated into Ms. Campbell's credit file with respect to her employment tenure – including Clarity's repeated reports that Ms. Campbell had been with her employer for "0 Months" – are not only patently absurd given their chronological impossibilities, but they also create a misleading and unreliable record of Ms. Campbell's employment stability and the damaging impression that Ms. Campbell was either repeatedly unemployed or had a tendency to abruptly switch occupations.

49. Clarity's reporting further demonstrates a basic failure to confirm

that data is being placed in the correct section of her credit file. The value "HAYES" appears in Ms. Campbell's file as both an Employer Name and an Occupation.

50.    An employer is a business; an occupation is a job function the consumer performs. These are categorically distinct types of information, and Clarity's own disclosure separates them into distinct sections.

51.    The appearance of the same value in both fields is the signature of an intake process that accepts whatever data furnishers transmit without confirming the data is even being placed in the correct field. A reasonable procedure to assure maximum possible accuracy would, at minimum, refuse to populate the Occupation field with values that are obviously company names.

52.    Clarity's reporting of Ms. Campbell's "Net Monthly Income" contains variations so extreme and statistically improbable that, on their face, the data is virtually assured to be false in substantial part. Reasonable procedures designed to assure maximum possible accuracy of consumer reports would have flagged these figures as facially unreliable rather than incorporating and selling them.

53.    Clarity's file contains eight different income figures for Ms. Campbell, ranging from $1,191 to $5,956 per month, including: $1,191, $2,000, $2,750, $3,000, $3,600, and $5,956. These figures span a range of $4,765 per month

– a variation so vast that it is statistically impossible for all of them to accurately reflect Ms. Campbell's actual income.

54. On February 11, 2022 alone, Clarity simultaneously reported Ms. Campbell's Net Monthly Income as both $2,500 and $3,000. A person can only have one income at any given moment; reporting materially different income figures for the exact same date is, on its face, so atypical and internally contradictory that the data is virtually assured to be false.

55. No reasonable procedure designed to assure maximum possible accuracy of consumer reports could have permitted these mutually exclusive figures to be reported as if both were accurate.

56. For example, Clarity reported Ms. Campbell's Net Monthly Income as $1,191 – a figure that is clearly erroneous on its face. At $1,191 per month, the reported income is not even the Florida minimum wage (which yields approximately $2,427 per month for full-time work at $14.00 per hour) and falls below the federal poverty level.

57. Reporting such an implausibly low income for Ms. Campbell is false, highly defamatory, and financially damaging.

58. Income is a critical metric used by financial institutions to calculate debt-to-income ratios and evaluate creditworthiness. By reporting wildly inconsistent and internally contradictory income figures for Ms. Campbell,

Clarity's file creates a false and misleading picture of Ms. Campbell's financial situation, significantly increasing the likelihood of credit denials, reduced credit limits, or extension of credit on much less favorable, higher-interest terms.

59.    Clarity's reporting of Ms. Campbell's pay frequency is internally inconsistent. Clarity's file lists three different pay frequencies for Ms. Campbell – "BIWEEKLY," "MONTHLY" and "WEEKLY" – even though a consumer is paid on only one schedule at any given time.

60.    These pay schedules are mutually exclusive. A person paid weekly is not also paid monthly, and a person paid biweekly (every two weeks) is not also paid semimonthly (twice per month on fixed dates). Clarity's incorporation of contradictory pay-frequency data reflects an absence of data-quality controls and a failure to implement reasonable procedures to assure maximum possible accuracy of its consumer reports.

61.    Clarity's phone data is further internally inconsistent: the numbers "863-XXX-8926", "863-XXX-1958", "863-XXX-1985" each appear simultaneously in multiple of Ms. Campbell's phone columns – reported as both her personal phone and her work phone – which Clarity's own definitions treat as distinct categories of information.[1]

---

[1] In the paragraphs that follow, the middle three digits of each telephone number quoted from Clarity's file have been redacted by counsel to protect Ms. Campbell's privacy and are shown as "XXX." The original disclosure Clarity

62. Separate and apart from the cross-column inconsistencies described above, Clarity reports more than one distinct number within a single phone category for Ms. Campbell: four different cell phone numbers ("863-XXX-8926", "863-XXX-5667", "863-XXX-1958", and "863-XXX-1985"), five different home phone numbers ("615-XXX-2041", "863-XXX-8926", "863-XXX-1958", "863-XXX-1985", and "863-XXX-4814"), and five different work phone numbers ("615-XXX-2042", "863-XXX-1768", "863-XXX-6449", "863-XXX-2501", and "863-XXX-4814").

63. Clarity's own schema treats the cell-, home- and work-phone fields as discrete single lines, and a consumer following a stable telephone history will ordinarily have one number in each.

64. The accumulation of multiple distinct numbers within a single category is a hallmark of a file assembled from unreconciled furnisher data without any procedure to confirm that each number in fact belongs to Ms. Campbell in the capacity reported. To the extent any such number does not belong to Ms. Campbell – or is not her number in the specific capacity (cell, home, or work) under which Clarity reports it – its inclusion in her consumer report is an inaccuracy that reasonable procedures designed to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) would have prevented.

65. Clarity's consumer disclosure also contains an "Email Information"

generated and produced to Ms. Campbell contained the full telephone numbers; Clarity retains a copy of that unredacted disclosure in its own records.

section, which the agency uses to associate online identifiers with Ms. Campbell's credit file. That section reports four email addresses ("B...@YAHOO.COM", "R...@MSN.COM", "T...@YAHOO.C", and "T...@GMAIL.CO"; local part redacted by counsel).

66.    Online identifiers of this kind function as identity keys: the subprime lenders to whom Clarity sells consumer reports, and Clarity's own record-matching logic, use them to associate a furnished record with a particular consumer. An identifier that does not belong to the consumer is therefore not a harmless cosmetic entry – it is a vector for mismatching Ms. Campbell's file with data that is not her own.

67.    To the extent any identifier set out above does not belong to Ms. Campbell, its inclusion in her consumer report is an inaccuracy that reasonable procedures designed to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) would have prevented; and to the extent Clarity ingested and disclosed the identifier with no procedure to verify that it is her own, that failure is itself further evidence of the unreliable intake the foregoing paragraphs describe.

68.    A prime example of Clarity's disregard for accuracy is its current reporting of five different dates of birth for Ms. Campbell, each containing a different month, day, and year. A consumer can only have one date of birth; the

additional dates Clarity has on file are necessarily false and inaccurate.

69. The harm to Ms. Campbell from this reporting is severe. Date of birth is a core identity field, and Clarity's own proprietary credit scoring system – along with the underwriting models of the subprime lenders to whom Clarity sells consumer reports – treats inconsistencies in identity data as a primary red flag for fraud and identity theft.

70. A consumer file showing five different dates of birth is, by design, scored as a high-risk applicant whose identity cannot be reliably established. The result is materially lower credit scores, denials of credit, and credit offered only on substantially less favorable terms – consequences Ms. Campbell suffered as a direct result of Clarity's reporting of false birth dates that no reasonable procedure designed to assure maximum possible accuracy of consumer reports would have permitted.

71. These identity failures do not merely coexist – they compound. As of the July 23, 2026 disclosure, Clarity's file simultaneously reported five different dates of birth and four distinct driver's-license numbers for a single consumer.

72. A person's name, date of birth, and government identification number are the fields an identity is made of. A file that cannot consistently state either her date of birth or her driver's-license number does not coherently describe any one human being – and every lender that purchases the file

receives, and scores, that incoherence.

73. Each additional conflicting identifier deepens the fraud- and identity-risk signal that Clarity's own products attach to Ms. Campbell, so the harms from these conflicts are not merely cumulative but mutually reinforcing.

74. The accumulation is also independently probative of Clarity's procedures. A single consumer file collects five different dates of birth and four distinct driver's-license numbers only where no identity-consistency check of any kind is applied at intake.

75. Not one of these conflicts required outside information to detect; each is visible on the face of Clarity's own tables. 15 U.S.C. § 1681e(b) does not tolerate one such failure, much less two at once, in the same file, sold to creditors as reliable.

76. The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income.

77. Lenders to whom Clarity sells reports also rely on the identifying information in those reports – such as the consumer's name, date of birth, and address – both to confirm that the report describes the applicant and to assess the risk that an application is fraudulent or that the file has been mismatched to the wrong person. Clarity markets risk scores and fraud-detection products to those

lenders.

78.    A file carrying inconsistent or facially improbable identifying information tends to present the consumer as a higher fraud or identity risk and impairs the lender's ability to verify the consumer's identity during underwriting.

79.    Consequently, Clarity's inclusion of demonstrably false information about Ms. Campbell's consumer identity, date of birth, driver's license information, employer address, housing status, months at address, months at employer, net monthly income, pay frequency, and phone-number information had a significant negative impact on Ms. Campbell's ability to obtain new credit with favorable terms.

80.    Each of the multiple reports sold by Clarity contained false information about Ms. Campbell's consumer identity, date of birth, driver's license information, employer address, housing status, months at address, months at employer, net monthly income, pay frequency, and phone-number information and more.

81.    The FCRA is clear in its requirement that Clarity, as a CRA, is required to prepare accurate reports:

Accuracy of Report.  Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to

assure maximum possible accuracy of the information concerning the individual about whom the report relates.  15 U.S.C. §1681e(b).

82. Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Campbell.

83. Clarity was thus aware that when it sold reports on Ms. Campbell that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

84. Additionally, when Ms. Campbell requested her credit file disclosure from Clarity on July 23, 2026, Clarity provided Ms. Campbell with only a redacted version of her credit file. Clarity redacted all but the last few digits of the driver's license in the disclosure.

85. Nothing in the FCRA allowed Clarity to redact this information, but it did so anyway.

### Clarity's Lack of Standards Constitute Willful Violations of the FCRA

86. Clarity operates in stark contrast to its parent company, Experian.

87. While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

88. In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks. Clarity's file on Ms. Campbell is the direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible – information that no reasonable data-quality procedure could have permitted to enter a consumer report.

89. The inaccuracies in Ms. Campbell's file are not isolated transcription errors traceable to a single furnisher.

90. They span multiple categories of the data Clarity reports – including consumer identity, date of birth, driver's license information, employer address, housing status, months at address, months at employer, net monthly income, pay frequency, and phone-number information – and they share a common signature: each is the kind of error that a single, elementary validity check would have caught before the data was incorporated into Ms. Campbell's file and sold to creditors.

91. Clarity instead operates a system designed to accept and resell that data as if it were genuine.

92. Clarity is not unaware that this is occurring. Clarity has been the subject of repeated FCRA litigation arising from the same categories of

inaccuracy described in this complaint – multiple or facially impossible dates of birth on a single consumer's file, invalid driver's license entries, contradictory residential and employment histories, the wholesale incorporation of placeholder or impossible data, and the incorporation of facially improbable or commingled identifying information.

93.    Despite this notice, Clarity has continued to operate its systems in materially the same way, without implementing the basic validity checks that would have prevented the errors complained of here.

94.    Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Ms. Campbell.

## Damages Suffered by Ms. Campbell

95.    As a direct and proximate result of Clarity's inaccurate reporting, Ms. Campbell applied for credit and was either denied outright or offered credit on materially less favorable terms than she would have received had Clarity's file accurately reflected her true creditworthiness. Lenders and creditors who purchased Clarity's consumer reports made adverse decisions based on the false, impossible, and internally contradictory information described herein.

96.     The practical consequences of Clarity's inaccurate reporting are severe. A consumer whose file carries facially improbable or inconsistent identifying information, a conflicting employment history, inconsistent income, and an unstable or inconsistent address history – as Clarity reported about Ms. Campbell – is treated as a higher-risk borrower by the subprime lenders that Clarity primarily serves.

97.     This directly results in credit denials, higher interest rates, lower loan amounts, and more restrictive repayment terms, causing Ms. Campbell concrete and measurable financial harm.

98.     As a result of the Defendant's actions, Ms. Campbell has suffered damages, including wasted time trying to figure out what the information in her Clarity file means and how it got there, lost financial opportunities, denial of credit, less favorable credit terms, lower credit scores, significant emotional distress and aggravation, and damage to her reputation.

99.     As of the date of this filing, Clarity continues to include the aforementioned false information in Ms. Campbell's credit file. As such, Ms. Campbell demands that Clarity conduct an investigation upon service of this lawsuit and correct her file within 30 days.

100.    Ms. Campbell has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

101.  Ms. Campbell adopts and incorporates paragraphs 1 through 100 as if fully stated herein.

102.  Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Campbell, as Clarity sold consumer reports containing erroneous information about her consumer identity, date of birth, driver's license information, employer address, housing status, months at address, months at employer, net monthly income, pay frequency, phone-number information, and more.

103.  Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

104.  Clarity's conduct was thus willful or done with a reckless disregard for Ms. Campbell's rights under the FCRA.

105.  As a result of its conduct, Clarity is liable to Ms. Campbell for the greater of Ms. Campbell's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Campbell respectfully requests this Honorable Court enter judgment against Clarity for:

a.  the greater of Ms. Campbell's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.  such other relief that this Court deems just and proper.

## COUNT II
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

106.  Ms. Campbell adopts and incorporates paragraphs 1 through 100 as if fully stated herein, and pleads this count strictly in the alternative.

107.  Clarity owed Ms. Campbell a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Campbell.

108.  Clarity violated 15 U.S.C. § 1681e(b) when it sold consumer reports containing erroneous information about Ms. Campbell's consumer identity, date of birth, driver's license information, employer address, housing status, months at address, months at employer, net monthly income, pay frequency, phone-

number information, and more.

109.    Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Ms. Campbell is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Campbell respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## COUNT III
### CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

110.    Ms. Campbell adopts and incorporates paragraphs 1 through 100 as if fully stated herein.

111.    Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Ms. Campbell with a redacted version of her Consumer Disclosure.

112.    Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

113.    Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

114. As a result of its conduct, Clarity is liable to Ms. Campbell for the greater of Ms. Campbell's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Campbell respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Campbell's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

## COUNT IV
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)
### (Pled in the Alternative to Count III)

115. Ms. Campbell adopts and incorporates paragraphs 1 through 100 as if fully stated herein, and pleads this count strictly in the alternative.

116. Clarity owed Ms. Campbell a legal duty to accurately disclose all the information in her credit file upon her request.

117. Clarity breached this duty when it only provided Ms. Campbell with

a redacted version of her Consumer Disclosure.

118. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Ms. Campbell is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Campbell respectfully requests this Honorable Court enter judgment against Clarity for:

a.  actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.  such other relief that this Court deems just and proper.

## COUNT V
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)

119. Ms. Campbell adopts and incorporates paragraphs 1 through 100 as if fully stated herein.

120. Clarity violated 15 U.S.C. § 1681b(a)(3) when it furnished two consumer reports regarding Ms. Campbell to Online Payday Loan American Web Loan and CheckAdvanceUSA in response to credit applications submitted in the name of "Billy Ramos", and "Roger Crouch" – applications that concerned a different, unrelated individual and not Ms. Campbell.

121. Clarity had no reason to believe it had a permissible purpose to furnish reports regarding Ms. Campbell.

122. Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

123. Clarity's conduct was willful, intentional, and/or exhibited a reckless disregard for its duties under the FCRA.

WHEREFORE, Ms. Campbell respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Campbell's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

## COUNT VI
## <u>NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)</u>
### (Pled in the Alternative to Count V)

124. Ms. Campbell adopts and incorporates paragraphs 1 through 100 as if fully stated herein, and pleads this count strictly in the alternative.

125. Clarity had a legal duty to Ms. Campbell to only sell consumer reports to those persons with a permissible purpose to obtain the reports.

126. Clarity breached this duty when it furnished two consumer reports regarding Ms. Campbell to Online Payday Loan American Web Loan and CheckAdvanceUSA in response to requests concerning a different, unrelated individual, and thus without a permissible purpose as to Ms. Campbell.

127. Clarity's breach entitles Ms. Campbell to her actual damages, reasonable attorneys' fees, and costs.

WHEREFORE, Ms. Campbell respectfully requests this Honorable Court enter judgment against Clarity for:

a.   actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.   such other relief that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on July 23, 2026, by:

**SERAPH LEGAL, P. A.**

*/s/ James Hubbard*

_____

James Hubbard, Esq.
Florida Bar No.: 121405
JHubbard@seraphlegal.com
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-1230
*Attorneys for Plaintiff*